IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

|   |   |   |
|---|---|---|
| In re Civil Investigative Demand 15-439 | ) ) ) ) ) ) | 5:16-mc-3<br>By: Michael F. Urbanski<br>United States District Judge |

## MEMORANDUM OPINION

This case involves Civil Investigative Demand 15-439 (the "CID"), issued December 28, 2015 to Beam Brothers Trucking, Inc. ("Beam") pursuant to 31 U.S.C. §§ 3729-33. In issuing the CID, the United States seeks documents and interrogatory responses related to an ongoing civil investigation by the Department of Justice ("DOJ") into whether Beam submitted false claims to the United States Postal Service ("USPS") under contracts to transport mail.

Before the court are Beam's petition to set aside the CID, ECF No. 3, and the United States' cross petition to enforce the CID, ECF No. 9.[1] Under 31 U.S.C. § 3733, a CID may be issued by the Attorney General, or a designee, "before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b)." The primary issues before the court are (1) whether the actions taken by the United States constitute either commencement of a civil proceeding or intervention in a *qui tam* action, and (2) whether the CID is overly burdensome, given that it commands Beam to

---

[1] The pending motions are Beam's petition to set aside the CID, ECF No. 3, and the government's cross petition to enforce the CID, ECF No. 9. The parties also submitted additional briefing at ECF Nos. 13 and 20. All of these filings were unredacted, and remain under seal. Subsequently, the parties submitted redacted versions of their initial ECF filings. See ECF Nos. 22–25. For clarity, the court will cite to these redacted versions when it analyzes the factual contentions and arguments submitted for review.

1

produce a large quantity of materials already in the possession of the United States. Because the court finds that the United States has not commenced a civil proceeding or made an election in regards to a *qui tam* action, Beam's motion to set aside the CID, ECF No. 3, is **DENIED.**

The court finds that DOJ-Civil has authority to issue the CID and that the information sought appears relevant to the investigation of Beam. At the same time, however, the government acknowledges that certain of the information requested in the CID is already in its possession by virtue of its six year investigation. Given this lengthy government investigation, during which the government has obtained a large volume of Beam's data, the court is required to consider whether enforcement of the CID will be unduly burdensome in that it will require production of information already within the government's possession. United States v. Powell, 379 U.S. 48, 57-58 (1964). Beam argues that many of the documents requested duplicate those obtained by the government by means of a search warrant and Beam's voluntary production. The government disputes the amount of duplication wrought by the CID, and posits that certain other non-duplicative information is necessary. Unlike the parties, the court is in no position to assess the extent to which the CID would require duplicative production. As such, the court **TAKES UNDER ADVISEMENT** the government's motion to enforce the existing CID, ECF No. 9, and **DIRECTS** the parties to meet and confer as to the production of non-duplicative information relevant to the government's inquiries. Should the parties not be able to negotiate the production of relevant, non-duplicative information within sixty (60) days, the

government may renew its motion or issue an Amended CID narrowly tailored to obtain relevant and non-duplicative information within ninety (90) days.

## I.

Beam is a trucking company located in Mt. Crawford, Virginia, and its business consists primarily of shipping mail for the USPS. ECF No. 24, at 1. Beam contracts with the USPS to deliver mail on a number of Highway Contract Routes ("HCR"). Id. at 3.

Since 2005, Beam participated in the USPS's HCR Fuel Management Program ("FMP"). Id. Beam indicates that prior to 2005, postal contractors like Beam incorporated fuel cost estimates into their contract bids, subject to an adjustment for fuel price fluctuations. Id. In the pre-2005 system, contractors were allowed to retain fuel money to the extent the estimate exceeded actual use. Id. Beam indicates that since 2005, USPS required postal contractors to participate in the FMP program. Id. Under the FMP, USPS provided contractors including Beam with Voyager fleet transaction cards, essentially credit cards, to purchase fuel for HCR routes. Id. Beam received a number of Voyager cards to use for authorized fuel purchases. Id. FMP clauses contained in the HCR contracts governed the appropriate use of the Voyager cards. Id. In 2014, USPS began phasing out use of the Voyager cards after determining that use of the cards was generally ineffective and that USPS itself could not comply with requirements of the Voyager program. Id. at 4. The government indicates that while many HCR contracts provide fuel reimbursement through use of the Voyager card, some contracts stipulate pre-payment of fuel expenses based on a monthly quota that fluctuates with regional fuel price changes. ECF No. 22, at 3.

3

The government has been investigating whether that Beam may have misused the Voyager cards by using them for fuel on non-USPS routes, for farm equipment, for personal vehicles, and on HCR contracts where Beam had already been reimbursed through an alternative payment arrangement. Id. at 4. The government questions whether Beam has misused the Voyager cards, leading to Beam's receipt of fuel reimbursements far in excess of what was stipulated under contracts with the USPS. Id.

On February 12, 2013, approximately thirty federal agents executed a search warrant on Beam's Mt. Crawford, Virginia office, seizing large quantities of corporate records. ECF No. 24, at 2.[2] In an affidavit in support of the application for the search warrant to be executed on Beam, a special agent with the United States Department of Transportation ("USDOT") Office of the Inspector General ("OIG") stated that "[s]ince June of 2010, USDOT-OIG and the Postal Service-OIG have been engaged in this investigation." Aff. of Joseph A. Harris, ECF No. 24–1, Ex. 3, ¶ 11.

Following the raid, Beam engaged in discussions with various government agencies regarding the investigation. ECF No. 24, at 2. On September 4, 2013, Beam personnel met with government officials representing DOJ-Civil, DOJ-Criminal, and the U.S. Attorney's office for the Western District of Virginia. Id. Greg Pearson, an attorney with DOJ-Civil and the named custodian of the CID, attended the September 4, 2013 meeting. Id. In addition to the parallel civil and criminal investigations, Beam believes that a *qui tam* action has been filed against it in New Jersey. Id. at 4.

---

[2] The United States indicates that the search warrant was executed in relation to a related criminal investigation of Beam. While DOJ-Civil has access to materials seized on February 12, 2013, DOJ-Civil has deferred to the criminal investigation and did not request documents or information from Beam until July 2015.

4

Beam contends the government has decided to intervene in the *qui tam* action, rendering service of the CID improper. The government has not confirmed the existence of the *qui tam* action, nor has the government filed a suit under 31 U.S.C. § 3730(a). ECF No. 22, at 11. On July 29, 2015, Gregory Pearson, on behalf of DOJ-Civil, sent a letter to Beam outlining the government's "findings regarding potential False Claims Act…violations by Beam Bros. Trucking." July 29, 2015 Letter from Greg Pearson, ECF No. 24–1, Ex. 6. This letter relayed the United States' belief that Beam had improperly used Voyager cards and thereby obtained "money from the federal government to which it [was] not entitled, and [did] so with actual knowledge or recklessly." Id.

Negotiations, including a settlement proposal prepared by the government, failed to resolve the concerns raised in the July 29 letter, and DOJ-Civil served the CID on Beam on December 28, 2015. ECF No. 22, at 5. The CID seeks production of documents and answers to written interrogatories that relate to Beam's use of Voyager cards, government contracts, and fuel reimbursement.

Beam asserts that in executing the February 12, 2013 search warrant, the government seized Beam contracts, driver gas receipts, fifty-five boxes of fuel files, three boxes that included fuel files, and eight boxes of employee files. ECF No. 25, at 6. The government also imaged all of Beam's computers, which contained a number of documents pertaining to fuel. Id. Beam asserts that a number of other documents relating to fuel purchases have been voluntarily produced. Id.

The government does not challenge that it possesses some documents responsive to the CID, but disputes the extent of the duplication requested. ECF No. 22, at 10. Even

5

were it to consider Beam's concerns as to duplication to be true, the government asserts "that over half the materials requested by the CID have yet to be provided and should be provided." Id.

## II.

The False Claims Act ("FCA"), 31 U.S.C. §3729-33, empowers the Attorney General, or her designee, to issue a CID requesting documents, responses to interrogatories, or deposition testimony. 31 U.S.C. § 3733(a)(1). The CID can only be issued "before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b)." 31 U.S.C. § 3733(a)(1); United States v. Kernan Hosp., No. RDB-11-2961, 2012 WL 5879133, *3 (D. Md. Nov. 20, 2012). The CID allows the government "to assess quickly, and at the least cost to the taxpayers or to the party from whom information is requested, whether grounds exist for initiating a false claims suit." United States v. Markwood, 48 F.3d 969, 979 (6th Cir. 1995).

A CID is an administrative subpoena. Markwood, 48 F.3d at 975-76. Courts must enforce an administrative subpoena where: (1) the issuing agency has authority to engage in the investigation; (2) the issuing agency has complied with the statutory requirements of due process; (3) the information sought is reasonably relevant to the investigation and (4) where the information sought is not unduly burdensome. E.E.O.C. v. Ranstad, 685 F.3d 433, 442 (4th Cir. 2012); EEOC v. Maryland Cup Corp., 785 F.2d 471, 476 (4th Cir. 1986); see also United States v. Powell, 379 U.S.48, 57-58 (1964); EEOC v. Ocean City Police Dept., 787 F.2d 955, 957 (4th Cir. 1986); Marshall v. Stevens People & Friends for Freedom, 669 F.2d 171, 176 (4th Cir. 1981)(citing United States v. Morton Salt Co., 338 U.S. 632, 652 (1950)).

6

## III.

The court will first address Beam's petition to set aside the CID and decide whether the United States has made an election under 31 U.S.C. § 3733(a)(1). Beam contends that the government has made an election, or a *de facto* election, under 31 U.S.C. § 3733(a)(1), rendering the issuance of the CID improper. The government counters that no such election has been made and that the CID is enforceable. Because the courts finds that the actions taken by the United States do not amount to an election, DOJ-Civil is not barred from issuing a CID. As such, Beam's petition to set aside CID 15-439, ECF No. 3, is **DENIED**.

### A.

Beam urges the court to find the government has actually decided to intervene in a *qui tam* action or commence an FCA claim. ECF No. 24, at 6-10. Alternatively, Beam argues that the government's conduct amounts to a commencement of a *de facto* proceeding against Beam. Id. at 11-15. Beam points out that the length of the government's investigation, the volume of information about Beam in the government's possession, and the analysis and assessment necessary to formulate a settlement proposal compel the conclusion that the government has decided to intervene in the *qui tam* case. Beam argues that the CID is thus improper and will allow the government to gain a significant upper-hand in litigation or leverage a more favorable settlement as Beam will have had no opportunity to engage in discovery before the government has accumulated all the materials needed to pursue a civil case.

### B.

7

There is little guidance as to what constitutes "commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b)." Beam relies heavily on United States v. Kernan Hosp., No. RDB-11-2961, 2012 WL 5879133, *3 (D. Md. Nov. 20, 2012), for the proposition that a federal case need not actually be pending for a court to find the government has made an election under § 3733. In Kernan, the United States alleged that defendant Kernan Hospital defrauded the government by systematically "upcoding" treatments to increase Medicare, Medicaid, and Tricare reimbursements. Id. at *1. The United States' complaint, filed in October 2011, was dismissed in full for failure to adequately plead fraud. Id. After the dismissal of its initial complaint, the United States issued a CID requiring Kernan Hospital to submit documents related to medical records, coding summaries, and e-mails. Id. at *1-2. Kernan Hospital moved to set aside the CID, arguing that the United States had commenced a civil proceeding by filing a complaint. Id. at *2. The court ruled in favor of Kernan Hospital, reasoning that a suit need not actually be pending to bar the issuance of a CID. Id. at *5-7. The court explained that where the government engaged in discovery leading to the filing of a lawsuit, the issuance of a CID—to determine whether a lawsuit should be brought in the first place—no longer served any purpose. Id. Because the United States had actually filed suit, an action was commenced for purposes of § 3733 and the CID could serve no lawful purpose. Id. at 7.

The court gave no credence to the United States' argument that the CID sought information needed to amend the complaint and cure pleading deficiencies. Id. at 6. The court explained that the government had ample opportunity to acquire such information

8

during a lengthy three year investigation that involved review of over 19,000 documents and deposition testimony pursuant to an earlier CID. Id. Indeed, the voluminous discovery provided enough evidence to merit filing a suit. In sum, Kernan teaches that the filing of a suit—regardless of whether that suit is pending at the time a CID is issued—bars the government from thereafter issuing a CID.

Though the government has similarly engaged in a lengthy investigation related to potential claims against Beam, Kernan does not reach the issue presented to this court: whether an extensive investigation and a settlement offer amount to the commencement of an FCA action or an election as to a *qui tam* action. Assuming Beam is correct in asserting that a *qui tam* action has been filed, that filing in itself does not bar the government's issuance of a CID. Avco Corp. v. U.S. Dep't of Justice, 884 F.2d 621, 627 (D.C. Cir. 1989).

### C.

Beam presents a compelling argument that after a more than a six year investigation, during which time the government has amassed a large quantity of information through search warrants that included imaging of Beam computers, voluntary production of documents, and interviews with many Beam employees, the government should have ample information to determine whether to intervene in a *qui tam* action. Based largely upon decisions by courts declining to extend the government's time to review and evaluate *qui tam* cases prior to unsealing and service, Beam argues that the length and scope of the government's investigation, combined with the analysis necessary to formulate a settlement offer, indicate the United States, in fact, has made an election to intervene in the *qui tam* case against Beam.

9

For example, in United States ex rel. Costa v. Baker & Taylor, 955 F. Supp. 1188 (N.D. Cal. 1997), the court denied the government's motion for a fourth extension to the sealing period in a *qui tam* case and compelled the government to make an election as to intervention. The court remarked that "[i]n this case, the government appears to be fully engaged in its discovery, without giving the defendants the opportunity even to answer the complaint." Id. at 1190. The court found the government's arguments as to the ramifications of lifting the seal on settlement discussions and related criminal case unpersuasive, pointing out that the government already had time far in excess of the 60-day sealing period envisioned by Congress to make its intervention decision.

The opinion of the court in U.S. ex rel. Martin v. Life Care Center of America, Inc., 912 F. Supp. 2d 618 (E.D. Tenn. 2012), was likewise critical of unduly extending the sealing period for unserved *qui tam* actions. The court stated "[i]t defies logic to suggest that the government would give defendant a 'lengthy and detailed' report of an investigation and attempt to obtain a settlement based on claims that it did not intend to pursue." Id. at 624.

The Fourth Circuit Court of Appeals has expressed concern with the frequency and lack of scrutiny with which district courts extend sealing periods in *qui tam* cases, emphasizing that courts must "weigh carefully any such extension beyond the 60-day [sealing] period." ACLU v. Holder, 673 F.3d 245, 257 (4th Cir. 2011). The Fourth Circuit has also upheld the quashing of a grand jury subpoena where the district court found the "government sought the [grand jury] subpoena solely for the purpose of obtaining discovery for the civil [*qui tam*] proceeding." In re Grand Jury Subpoena, 175 F.3d 332, 340 (4th Cir. 1999).

Despite the tenor of these cases, they do not directly support Beam's argument that the government has intervened in a *qui tam* action for purposes of 31 U.S.C. § 3733. Thus, the length and depth of the government's investigation—though often dispositive in opinions considering *ex parte* motions to extend *qui tam* seals—play a less significant role in ascertaining whether United States has elected to intervene in a *qui tam* action.

## D.

As noted above, § 3733 precludes the issuance of a CID where the government commences a civil FCA action pursuant to § 3730(a) or other false claims law or makes an election under section § 3730(b). Here, the United States has filed no claim against Beam pursuant to the FCA or any other false claim law. Thus, DOJ-Civil is only precluded from issuing the CID if the United States' actions amount to a decision to intervene in a qui tam action.[3]

In ACLU v. Holder, the Fourth Circuit Court of Appeals explained the process by which the United States accepts or declines intervention in a qui tam action:

> If the United States intervenes, it notifies the court and the qui tam relator, and the United States takes over the litigation. Following intervention, the complaint is unsealed, the docket is unsealed, and the United States serves the complaint on the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure. At that point, the United States may amend the complaint, move to dismiss the action or certain claims, seek to settle the action, pursue the claims through alternative remedies, or litigate the action. See 31 U.S.C. §§ 3730(b)(1), 3730(c)(2)(A) (discussing dismissal); id. § 3730(c)(2)(B) (discussing settlement); id. § 3730(c)(5) (discussing alternative administrative false claims remedies)
> ....

---

[3] Again, the court notes that while Beam provides good reason to suspect a *qui tam* action has been filed, the existence of such case is unconfirmed.

11

> If the United States declines to intervene, it notifies the court and the qui tam relator. The complaint is then unsealed, the docket is unsealed, and the qui tam relator serves the complaint on the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure. The qui tam relator then litigates the case against the defendant.

673 F.3d at 250-51. As this case makes clear, the government's election to intervene involves formal steps that result in the unsealing of the *qui tam* action, service upon the defendant, and litigation with or without the United States taking part. In the present case, neither the complaint nor docket for the putative *qui tam* action has been unsealed, nor has Beam been served with a complaint. Thus, under the Fourth Circuit's description of an intervention election, the United States has not intervened in a *qui tam* action.

Beam asserted at oral argument that had it accepted the United States' settlement offer, a *qui tam* relator would have been entitled to a portion of the settlement proceeds. Indeed, under 31 U.S.C. § 3730(c)(5), the relator is entitled to proceeds where the United States settles prior to making an intervention election. Such a settlement is a pre-intervention alternate remedy. See U.S. ex rel. Bledsoe v. Community Health System, Inc., 342 F. 3d 634, 649 (6th Cir. 2003) ("[A] settlement pursued by the government in lieu of intervening in a *qui tam* action asserting the same FCA claims constitutes an alternate remedy for purposes of 31 U.S.C. § 3730(c)(5).") Thus, under Bledsoe and § 3730(c)(5), pre-intervention settlement effectively amounts to an election not to intervene in which the relator is entitled to proceeds and the United States is precluded from further pursuing the *qui tam* action. In the present case, no settlement between the United States and Beam has been reached. Therefore, the court need not consider the ramifications of an actual settlement between Beam and the United States. It is undisputed that the United States

12

retains the rights to intervene in any sealed *qui tam* action and no relator is yet entitled to proceeds.

E.

Beam may well have good reason to believe that it may soon face a *qui tam* action. However, this court, like Beam, has no way of confirming the existence or status of a sealed *qui tam* action pending in a different district. The facts before the court reveal that the government has not filed an FCA claim, no *qui tam* action has been unsealed or served, and the government has taken no action that would foreclose its right to intervene in a *qui tam* action. Therefore under 31 U.S.C. § 3733(a), DOJ-Civil has taken no action that bars the filing of CID 15-439. Accordingly, Beam's Petition to Set Aside CID No. 15-439, ECF No. 3, is **DENIED**.

IV.

Having denied Beam's motion to set aside the CID, the court now considers the government's cross-petition to enforce CID pursuant to 31 U.S.C. § 3733(j). ECF No. 9. As noted above, a CID is an administrative subpoena enforceable when (1) the issuing agency has authority to engage in the investigation; (2) the issuing agency has complied with the statutory requirements of due process; (3) the information sought is reasonably relevant to the investigation; and (4) where the information sought is not unduly burdensome. E.E.O.C. v. Ranstad, 685 F.3d 433, 443 (4th Cir. 2012).

Beam does not dispute that DOJ-Civil is an agency with authority to issue the CID. DOJ-Civil, acting on behalf of the Attorney General, plainly possesses authority to

13

investigate potential FCA violations. As noted above, 31 U.S.C. § 3733 does not preclude the filing of a CID in the present case. Therefore the first and second prongs are met.

Nor does Beam argue that the CID requests information that is irrelevant to the government's investigation into Beam's use of the Voyager cards. As the government notes, as long as the materials requested "[t]ouch a matter under investigation," an administrative subpoena will survive a challenge that the material is not relevant. Sandsend Financial Consultants Ltd. v. Federal Home Bank Bd., 878 F.2d 875, 882 (5th Cir. 1989). DOJ's determination is accepted so long as it is not obviously wrong. NLRB v. American Medical Response, Inc., 438 F.3d 188, 193 (2nd Cir. 2006). The CID seeks documents that relate to Beam's use of Voyager cards, HCR contracts, fuel adjustment prices, non-FMP USPS contracts, Beam's compliance and opinion as to appropriate use of Voyager cards, pooling of fuel purchases, fuel used in relation to Voyager contracts, and documents to support other responses to the United States inquiries. CID 15-439, ECF No. 24–1, Ex. 4. Thus, the requested documents appear relevant to the government's investigation. The third prong is met.

As to the fourth prong, Beam maintains the burden of showing the subpoena is unduly burdensome or unreasonably broad. F.T.C. v. Texaco, Inc., 555 F.2d 862, 882 (D.C. Cir. 1977). "Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." Id. The Fourth Circuit Court of Appeals has explained that "[t]he burden of proving that an administrative subpoena is unduly burdensome in not easily met. The party subject to the subpoena must show that producing the documents would seriously disrupt its normal business operations."

14

N.L.R.B. v. Carolina Food Processors, Inc., 81 F.3d 507, 513 (4th Cir. 1996)(quoting EEOC v. Maryland Cup Corp., 785 F.2d 471, 477 (4th Cir. 1986)). However, "the district court is authorized to impose reasonable conditions and restrictions with respect to the production of the subpoenaed material if the demand is unduly burdensome." Texaco, Inc., 555 F.2d at 881.

In considering whether administrative subpoenas are properly issued, the United States Supreme Court requires "that the information sought is not already within the [agency's] possession." United States v. Powell, 379 U.S. 48, 57-58 (1964). Similarly, the Sixth Circuit Court of Appeals' test for analyzing administrative subpoenas issued by DOJ expressly requires that "the information sought is not already in the DOJ's possession." Doe v. United States, 253 F.3d 256, 265 (6th Cir. 2001). Though not explicitly addressed in the Fourth Circuit's test for administrative subpoenas, concerns as to duplicative production and DOJ-Civil seeking information already within its possession threaten an undue burden upon the subpoenaed party.

Though the government suggests that Beam overstates the extent to which the government already has taken or received documents responsive to the CID, the government, both in their brief and at oral argument, does not dispute that it already possesses many of the documents requested in the CID. This is particularly true, given that over the course of a six year investigation, the government has seized dozens of boxes of documents containing fuel and employee files, imaged Beam's computer hard drives, and received many other relevant documents through voluntary production. ECF No. 25, at 6.

15

Beam argues, and the court agrees, that the government's CID must be considered in the context of the lengthy and wide-ranging investigation that has already transpired. Given the scope of the government's investigation, the vast amount of information already in the government's possession by virtue of the search warrant and voluntary production, and the breadth of the pending CID, it may well be that it would be unduly burdensome for Beam to comply chapter and verse with the myriad specifications of the CID. As such, the court will take the government's request to enforce the CID, ECF No. 9, under advisement for sixty (60) days during which the parties are directed to meet and confer on categories of relevant, non-duplicative documents to be produced. Should such efforts fail, the government may renew its motion or issue an Amended CID narrowly tailored to obtain relevant and non-duplicative information within ninety (90) days.

## V.

Because the government has not commenced a civil proceeding under section 3730(a) or other false claims law, or made an election under section 3730(b), Beam's motion to set aside the CID, ECF No. 3, is **DENIED**. Though the court finds that DOJ-Civil has the authority to issue the CID and that the requested material appears relevant, the court has reservations requiring Beam to comply with a CID seeking the production of documents, many of which are already within the possession of the United States. Therefore, the government's motion to enforce the CID, ECF No. 9, is **TAKEN UNDER ADVISEMENT** for sixty (60) days during which the parties are directed to meet and confer regarding production of categories of relevant and non-duplicative information.

16

Should such efforts fail, the government may renew its motion or issue an Amended CID narrowly tailored to obtain relevant and non-duplicative information within ninety (90) days.

Entered: 08-12-2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge